UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT RILEY,

        Petitioner,

v.                                   CASE NO. 04-CV-71573-DT
                                   HONORABLE ARTHUR J. TARNOW
MARY BERGHUIS,

        Respondent.
_____/

**OPINION AND ORDER GRANTING PETITIONER'S
APPLICATION FOR THE WRIT OF HABEAS CORPUS**

Petitioner Robert Riley has filed an application for the writ of habeas corpus under
28 U.S.C. § 2254.  The habeas petition attacks Petitioner's state conviction for first-
degree murder.  Respondent urges the Court to deny the petition.  Petitioner's claim that
he was denied effective assistance of counsel by trial counsel's failure to move for a
directed verdict has merit.  Accordingly, the petition will be granted.

**I.  Background**

On March 4, 1998, a circuit court jury in Wayne County, Michigan found
Petitioner guilty of felony murder, MICH. COMP. LAWS § 750.316(1)(b).  The trial court
sentenced Petitioner to mandatory life imprisonment without the possibility of parole.

The conviction and sentence arose from the strangulation of Mark Seaton during a
larceny from Seaton's apartment on Covington Street in Detroit.  The prosecutor's theory

*Riley v. Berghuis*, No. 04-71573

was that Petitioner aided and abetted an acquaintance, David Ware, by subduing Seaton and by binding Seaton's wrists and feet. Petitioner did not testify, but he admitted in a statement to the police, which was read into the record, that he was present when Ware strangled Seaton and that he took Seaton's stereo after the incident. He claimed that Ware choked Seaton, taped Seaton's feet and arms with duct tape, and then choked Seaton a second time as Seaton started to breathe again. Petitioner had no explanation for his failure to leave the premises or to stop Ware's assault on Seaton. He claimed that he did not tell the police about the incident, despite the fact that Seaton was his friend, because he was afraid.

Petitioner appealed his conviction through counsel, arguing that (1) the evidence was insufficient to support the conviction, (2) the trial court should have *sua sponte* entered a directed verdict of acquittal, and (3) inadmissible hearsay testimony by Mary McKinney was presented to the jury. Petitioner argued in a *pro se* supplemental brief that his trial attorney's failure to request an evidentiary hearing and file a motion for a directed verdict of acquittal constituted ineffective assistance.

The Michigan Court of Appeals determined that the admission of Mary McKinney's hearsay statement concerning what David Ware had told her violated Petitioner's rights under the Confrontation Clause. The court of appeals held that, absent McKinney's testimony, the evidence was insufficient to support Petitioner's felony murder conviction. Because the court of appeals found sufficient evidence to support a

2

*Riley v. Berghuis*, No. 04-71573

finding of guilt on the underlying felony, the court remanded the case for entry of a judgment of a conviction for larceny from a building.  The court declined to address Petitioner's other issues in light of its ruling on the confrontation issue.  *See People v. Riley*, No. 211368, 2000 WL 33415967 (Mich. Ct. App. July 21, 2000).

The State applied for leave to appeal on the ground that Petitioner had waived the confrontation issue by demanding that Mary McKinney be called as a witness despite knowing the risk he was taking.  The Michigan Supreme Court agreed and, on January 2, 2002, it reversed the judgment of the court of appeals in lieu of granting leave to appeal and remanded the case to the court of appeals for consideration of Petitioner's other claims.  *See People v. Riley*, 465 Mich. 442; 636 N.W.2d 514 (2001).[1]

On remand, the Michigan Court of Appeals held that there was sufficient evidence to justify Petitioner's conviction and that the trial court did not err in failing to *sua sponte* direct a verdict of acquittal.  The court of appeals nevertheless reversed Petitioner's murder conviction on the basis of Petitioner's claim that defense counsel failed to move for a directed verdict of acquittal.  The court of appeals remanded the case a second time for entry of a judgment of conviction for larceny in a building.  *See People v. Riley*, No. 211368, 2002 WL 522822 (Mich. Ct. App. Apr. 5, 2002).[2]

─────────────────

[1]  Justices Marilyn J. Kelly and Michael F. Cavanaugh voted to grant leave to appeal rather than to decide the case summarily.

[2]  Judge Helene White wrote in a concurring opinion that, if there were insufficient evidence of murder at the close of the prosecution's proofs, defense counsel was

*Riley v. Berghuis*, No. 04-71573

The State appealed, claiming that the court of appeals had erred by weighing the evidence, rather than viewing it in a light most favorable to the prosecution. On April 23, 2003, the Michigan Supreme Court reversed the decision of the court of appeals and reinstated Petitioner's murder conviction after concluding that Petitioner was not denied effective assistance of counsel. *See People v. Riley*, 468 Mich. 135; 659 N.W.2d 611 (2003).

Petitioner raised his hearsay claim in a motion for relief from judgment, which the trial court denied, because the issue was decided on appeal. Rather than pursue an appeal from the trial court's decision, Petitioner filed the pending habeas petition. His grounds for relief read:

I.    Mr. Riley's conviction was wrongfully obtained by the use of inadmissible hearsay in violation of the Confrontation Clause.

II.   Mr. Riley's conviction was wrongfully obtained in the absence of sufficient evidence to establish guilt of the offense charged.

III.  Mr. Riley's conviction was wrongfully obtained in violation of the trial court's constitutional responsibility to comply with the mandates of due process of law.

IV.   Mr. Riley's conviction was wrongfully obtained due to being denied effective assistance of counsel.

---

ineffective for failing to move for a directed verdict. However, she thought that the prosecution's evidence was sufficient to withstand a motion for directed verdict. She concurred in the disposition of the case, because she thought that the law of the case dictated that result.

*Riley v. Berghuis*, No. 04-71573

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

*Riley v. Berghuis*, No. 04-71573

federal law erroneously or incorrectly.  Rather, that application must also be
unreasonable."  *Id*. at 411.

### III.  Discussion

### A.  Trial Counsel

The Court begins its discussion with an analysis of Petitioner's fourth and final
claim, which alleges ineffective assistance of trial counsel.  Petitioner contends that his
trial attorney should have moved for a directed verdict of acquittal at the close of the
prosecution's case.  According to Petitioner, there was support for such a motion, because
the prosecution failed to establish that Petitioner murdered Mark Seaton or aided and
abetted David Ware in murdering Seaton.

The Michigan Court of Appeals agreed with Petitioner that defense counsel's
omission fell below an objective standard of reasonableness and rendered the result of the
proceedings fundamentally unfair and unreliable.  The Michigan Supreme Court,
however, concluded that the elements of felony murder were proved beyond a reasonable
doubt and that defense counsel was not ineffective for failing to move for a directed
verdict.

### 1.  Relevant Law

To prevail on a claim of ineffective assistance of counsel, Petitioner must
demonstrate that the state court's conclusion was contrary to, or an unreasonable
application of, *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Williams v. Taylor*,

6

*Riley v. Berghuis*, No. 04-71573

529 U.S. at 391 (explaining that *Strickland* qualifies as "clearly established Federal law"

under 28 U.S.C. § 2254(d)(1) for purposes of ineffective-assistance-of-counsel claims).

The Supreme Court held in *Strickland,* that an attorney is constitutionally ineffective if

the attorney's performance was deficient and the deficient performance prejudiced the

defense.  *See Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if

"counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.

The defendant must show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at

687.

> Judicial scrutiny of counsel's performance must be highly deferential . . . .
> Because of the difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls within the wide
> range of reasonable professional assistance; that is, the defendant must
> overcome the presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."  *See Michel v. Louisiana,*
> [350 U.S. 91, 101 (1955)].

*Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at

687.  The defendant must show "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the

outcome."  *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and

*Riley v. Berghuis*, No. 04-71573

resulting prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

In Michigan, a defendant may move for a directed verdict of acquittal after the prosecution has presented its case in chief, after the defendant presents proofs, and even after the jury renders a verdict. *See* Mich. Ct. R. 6.419 (A) and (B). When ruling on a motion for a directed verdict of acquittal, the trial judge "must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Hampton*, 407 Mich. 354, 368; 285 N.W.2d 284, 288 (1979) (citations omitted).

An attorney's failure to move for a directed verdict constitutes ineffective assistance of counsel if there was insufficient evidence of guilt to support a guilty verdict and reason to believe that such a motion would be granted. *Burston v. Caldwell*, 506 F.2d 24, 28 (5th Cir. 1975). To prevail on his claim, Petitioner must show that a motion for a directed verdict of acquittal would have been successful. *United States v. Broadus*, 664 F. Supp. 592, 597 (D.D.C. 1987).

*Riley v. Berghuis*, No. 04-71573

## 2. Counsel's Performance

At the close of the prosecution's case in chief, there was no direct evidence that Petitioner killed Mark Seaton or aided and abetted David Ware in killing Seaton. There was evidence that Petitioner had committed a larceny. He admitted as much in his statement to the police. However, evidence that Petitioner aided and abetted David Ware in the murder came from Mary McKinney, who testified for the defense. McKinney testified that, according to David Ware, who was her son, Petitioner assisted Ware in subduing Mark Seaton and bound Seaton's hands with duct tape.

The Michigan Supreme Court concluded that Petitioner's participation in the murder was established by the fact that he engaged in the larceny.[3] In some cases, a jury may infer that a defendant aided and abetted a killing by participating in the underlying

---

[3] The supreme court's summary of the evidence reads:

[Petitioner's] statement to the police indicates that Ware strangled the victim twice. After the victim had been strangled, [Petitioner] heard a knock on the door. Assuming arguendo that [Petitioner] was initially unaware of Ware's intent to kill or cause great bodily harm, he certainly became aware of Ware's intent after the strangling incidents. Eyewitness testimony indicates that [Petitioner] participated in the crime by engaging in the larceny. In addition, Gloria Hollis's testimony indicates that [Petitioner] performed acts that assisted the commission of the murder. [Petitioner's] acts at the apartment door possibly precluded the provision of medical assistance to the victim while he was still alive, hampered detection of the murder, or facilitated defendant and Ware's escape.

*Riley,* 468 Mich. at 141; 659 N.W.2d at 614.

9

*Riley v. Berghuis*, No. 04-71573

felony.  *See Carines*, 460 Mich. at 759-60; 597 N.W.2d at 130; *Bulls*, 262 Mich. App. at 625; 687 N.W.2d at 164.[4]  Here, however, there was no evidence that Petitioner and Ware planned the larceny or forced their way into Seaton's apartment.  Petitioner did not have the victim's blood on his clothing, and neither he nor Ware attempted to hide the fact that they were carrying the victim's property out of the building.  One of them even asked a neighbor to hold the door open for him.  Although they apparently ran from the scene with the victim's property, there was no evidence that Petitioner facilitated his and Ware's escape.  Petitioner was observed in public two days after the crime.  These facts, along with evidence that Petitioner considered Seaton a friend, could have led the trial court to conclude at the close of the prosecution's proofs that Petitioner was not an active participant in the murder, but merely present, and that the larceny was an afterthought, not a felony within the scope of the murder.

Moreover, intent to commit the underlying felony in a felony murder case is an insufficient state of mind to establish the crime of murder.  *People v. Aaron*, 409 Mich. 672, 727; 299 N.W.2d 304, 326 (1980).  The facts and circumstances involved in the perpetration of a felony must demonstrate an intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm.  *Id.*, 409 Mich. at 228-29;

---

[4] Both these cases were decided after Petitioner's trial.

10

*Riley v. Berghuis*, No. 04-71573

299 N.W.2d at 326.  In the absence of Mary McKinney's testimony, there was no

evidence that Petitioner intended one of these outcomes.  He should have known from

David Ware's actions that Ware possessed the requisite state of mind, but without Mary

McKinney's testimony, there was no evidence that Petitioner actively participated in the

murder.  Petitioner informed the police that he merely watched as Ware choked Seaton.

"Mere presence, even with knowledge that an offense is about to be committed or is being

committed, is not enough to make a person an aider or abettor . . . ."  *People v. Burrel*,

253 Mich. 321, 323; 235 N.W.2d 170, 171 (1931) (quoting 1 Cyc. Crim. Law (Brill) §

233).  "[N]or is mere mental approval, sufficient, nor passive acquiescence or consent."

*Id.* (quoting same).

The Michigan Supreme Court determined that Petitioner assisted the commission

of the murder. The supreme court opined that Petitioner's "acts at the apartment door

possibly precluded the provision of medical assistance to the victim while he was still

alive, hampered detection of the murder, or facilitated [Petitioner] and Ware's escape."

*Riley*, 468 Mich. at 141; 659 N.W.2d at 614.

One who renders assistance to a felon, with knowledge of the felon's guilt, for the

purpose of hindering detection, arrest, trial, or punishment is an accessory after the fact.

*People v. Lucas,* 402 Mich. 302, 304; 262 N.W.2d 662, 663 (1978).  An accessory after

the fact may not be convicted as an aider and abettor.  *Id.*, 402 Mich. at 304-05; 262

N.W.2d at 663.  Furthermore, there is no evidence that Petitioner did anything in

11

*Riley v. Berghuis*, No. 04-71573

particular to facilitate his and Ware's escape.

Respondent contends that it was reasonable to infer that the only way the victim could have been overcome was if both assailants participated in subduing him.[5] However, the evidence indicated that Ware rendered Seaton temporarily unconscious the first time without any assistance.

Absent Mary McKinney's testimony, the evidence established that Petitioner was guilty of larceny from a building or, according to Michigan Supreme Court analysis, accessory after the fact, but that he was merely present while Ware strangled Seaton. The Court knows of no trial strategy that was served by failing to challenge the sufficiency of the evidence at the close of the prosecution's proofs. Defense counsel had nothing to lose by making a motion for a directed verdict and everything to gain, because the trial court could have concluded that the evidence was insufficient and that the case should not go to the jury. *Freeman v. Class*, 911 F. Supp. 402, 408 (D.S.D. 1995), *aff'd*, 95 F.3d 639 (8th Cir. 1996). Defense counsel's failure to move for a directed verdict of acquittal deprived Petitioner of fundamental fairness and amounted to deficient performance.

---

[5] There was evidence that Seaton was physically fit, muscular, and strong.

12

*Riley v. Berghuis*, No. 04-71573

### 3. Prejudice

The trial court stated at the conclusion of the case that it respected the jury's verdict and that there was a substantial amount of evidence to support the verdict. (Tr. Mar. 4, 1998, at 31-32.) Absent Mary McKinney's testimony, however, there was not a substantial amount of evidence to support the prosecutor's theory that Petitioner aided and abetted the murder. Thus, the trial court might have granted a motion for a directed verdict of acquittal on the first-degree murder charge. And because the trial court's verdict of not guilty would not have been subject to further review on appeal, even if based on an erroneous ruling, *Sanabria v. United States*, 437 U.S. 54, 64, 69, 75, 77-78 (1978); *Fong Foo v. United States*, 369 U.S. 141, 143 (1962), there is a reasonable probability that the result of the proceeding would have been different had defense counsel moved for a directed verdict of acquittal. Petitioner was prejudiced by his attorney's omission.

The Court concludes that Petitioner has satisfied both prongs of *Strickland* and that trial counsel was constitutionally ineffective. The Michigan Supreme Court's decision on the issue amounted to an unreasonable application of *Strickland*. Accordingly, the Court will grant a conditional writ of habeas corpus as to Petitioner's ineffectiveness claim.

13

*Riley v. Berghuis*, No. 04-71573

## B.  Failure to Direct a Verdict of Acquittal

Petitioner alleges in a related claim that the trial court was obligated to consider the evidence and enter a directed verdict of not guilty when defense counsel failed to move for a directed verdict of acquittal.  This argument is moot in light of the Court's decision to grant relief on Petitioner's claim regarding defense counsel's failure to move for a directed verdict of acquittal.

Moreover, Petitioner relies on Michigan Court Rule 6.419(A)[6] to support his claim, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Court has found no Supreme Court decision holding that a state court is obligated to consider on its own motion whether a directed verdict of acquittal should be entered.  Thus, the state appellate court's rejection of Petitioner's claim cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d)(1), and Petitioner's

---

[6]  Rule 6.419(A) states that, "[a]fter the prosecutor has rested the prosecution's case in chief and before the defendant presents proofs, the court on its own initiative may . . . direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support a conviction."  The rule does not require trial courts to direct a verdict of acquittal in appropriate cases.  It merely leaves the matter up to the trial court's discretion.

14

*Riley v. Berghuis*, No. 04-71573

claim has no merit in addition to being moot.

## C.  Hearsay and the Confrontation Clause; Waiver

Petitioner alleges next that his conviction was obtained by the use of inadmissible

hearsay.  The hearsay allegedly violated Petitioner's rights under the Confrontation

Clause of the United States Constitution because the declarant, David Ware, was an

unavailable accomplice.[7]

### 1.  The State Court Proceedings

The hearsay in question was Mary McKinney's testimony concerning what her

son, David Ware, told her the day after the murder.  The evidentiary problem arose

> [a]fter the prosecution rested [and] the defense called Mary
> McKinney as its only witness. . . .  She had no personal knowledge
> concerning the death of Mr. Seaton, but she had told the police of
> incriminating statements made to her by her son.  Her second-hand account
> to the police apparently included nothing concerning [Petitioner's]
> involvement in the killing.  The evident purpose of calling Ms. McKinney
> as a defense witness was to bolster the defense position that Mr. Ware alone
> was guilty of the murder.
>
> Unfortunately for [Petitioner], Ms. McKinney's testimony at trial
> was more detailed than her rendition to the police had been.  In telling the
> jury about her son's statements, she included details concerning
> [Petitioner's] active participation in the binding and subduing of the
> decedent.  Obviously, this was incriminating evidence against [Petitioner].

*Riley*, 465 Mich at 444-45; 636 N.W.2d at 515.  David Ware allegedly informed his

mother that

---

[7] Ware had not been apprehended at the time of Petitioner's trial.

*Riley v. Berghuis*, No. 04-71573

he had been at the victim's apartment, that the victim had made unwanted sexual advances, and that Ware had twice put the victim in a "sleeper hold." At trial [Ms. McKinney] testified that Ware told her that the victim began to struggle and that he told [Petitioner] to get a roll of duct tape that was on a table in the victim's apartment. Ware stated that [Petitioner] helped subdue the victim by taping his wrists. Ware also stated that both men thought the victim was alive and coming to when they left the apartment. McKinney approached the police and told them what her son had told her. She made a formal written statement. As noted, the written statement did not contain the hearsay testimony that inculpated [Petitioner] at trial. There was no reference to [Petitioner] helping to subdue the victim.

*Riley*, Mich. Ct. App. No. 211368, 2000 WL 33415967, at *3.

McKinney's testimony was admitted under an exception to the hearsay rule for statements against interest. *See* Mich. R. Evid. 804(b)(3). Petitioner alleges that the inculpatory testimony about himself did not fall within this exception and should not have been admitted in evidence, because it was unreliable and uncorroborated, having been uttered for the first time at trial.

The Michigan Court of Appeals determined that Petitioner's rights under the Confrontation Clause were violated, because the portion of McKinney's testimony that inculpated Petitioner lacked sufficient indicia of reliability. The Michigan Supreme Court reversed the court of appeals on the ground that Petitioner waived the right to challenge McKinney's testimony.

16

*Riley v. Berghuis*, No. 04-71573

## 2. Analysis

A waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  Whether there has been an intelligent waiver of a constitutional right depends on "the particular facts and circumstances surrounding th[e] case, including the background, experience, and conduct of the accused." *Id.*

Forfeiture, on the other hand, "is the failure to make the timely assertion of a right . . . ." *United States v. Olano,* 507 U.S. 725, 733 (1993).  Mere forfeiture, unlike waiver, does not extinguish an error.  *Id.*

Mary McKinney, who provided the hearsay testimony, was the only defense witness.  It was the prosecutor who objected to McKinney's anticipated testimony on the ground that it would be hearsay.  Defense counsel argued that the hearsay was admissible under Michigan Rule of Evidence 804(b)(3), because it was a statement against David Ware's interest.  The trial court initially sustained the prosecutor's objection, and, following a side bar conference, McKinney merely testified that she saw David Ware in late June of 1997 and had not seen him since July 8, 1997.  The prosecutor did not cross-examine McKinney, and defense counsel announced that there were no other defense witnesses.  (Tr. Mar. 3, 1998, at 50-52.)

After a lunch break, defense counsel recalled Mary McKinney and proceeded to elicit testimony concerning her conversation with David Ware on June 28, 1997.  During

*Riley v. Berghuis*, No. 04-71573

that conversation, Ware admitted to McKinney that he twice put a sleeper hold on Seaton. Ware also informed McKinney that he had instructed Petitioner to get some tape and that he taped his wrists.  It was not entirely clear on direct examination to whom McKinney was referring when she used the pronoun "he" and the phrase "this gentleman."[8]  The prosecutor, however, clarified the matter on cross- and re-cross examination of McKinney.  McKinney explained in response to the prosecutor's questions that her son had put a sleeper hold on Seaton and that Petitioner had helped subdue Seaton the second time with tape while Seaton struggled.  (Tr. Mar. 3, 1998, at 53-60, 63-64.)

After the defense rested and the jury had been excused temporarily, Petitioner's attorney explained to the trial court that she had notified Petitioner earlier in the day of Ms. McKinney's willingness to testify.  Defense counsel advised Petitioner that McKinney was present and ready to testify, but that there was a "down side" to calling

---

[8]  The actual testimony reads:

Q [by defense counsel]  Now, what happened after the victim was put into a sleeper hold the second time?

A [by McKinney]  Well, prior – well, I don't – well, he was out.  Almost out, but he was struggling.  And this gentleman here was standing there.  So he told him to get some tape.  It was masking tape.  And I asked – or duct tape, I think.  And I asked him, I says, well, where did you get the tape from?  He said the tape was on the table.  And he taped his wrists.  And both guys said it was impossible that the man was dead because he was alive when they left.  He was coming to at that time.

(Tr. Mar. 3, 1998, at 57.)

18

*Riley v. Berghuis*, No. 04-71573

her as a witness, because she could incriminate him. Defense counsel stated that Petitioner understood this possibility, was willing to take the risk, and advised her that he wanted McKinney to testify. When the trial court asked Petitioner whether this recitation of facts was correct, Petitioner responded, "Yes." (*Id.* at 70-71.)

Petitioner asserts that he relied on McKinney's written statement and that he was not adequately informed that McKinney's testimony would constitute a waiver of his constitutional rights. The record, however, indicates that defense counsel warned Petitioner of the risks associated with having McKinney testify. Defense counsel specifically advised Petitioner that McKinney could incriminate him. Petitioner was twenty-five years of age at the time, and he does not deny being so advised.

In summary, Petitioner failed to object to the disputed testimony and intentionally called McKinney as a witness for the purpose of eliciting hearsay testimony. He subsequently affirmed that he requested McKinney's testimony despite knowing the risks involved. The Court therefore agrees with the Michigan Supreme Court that Petitioner affirmatively waived his constitutional rights under the Confrontation Clause.

The state supreme court's decision was not contrary to, or an unreasonable application of, *Johnson* or *Olano.* Petitioner therefore has no right to habeas relief on the basis of his hearsay claim.

19

*Riley v. Berghuis*, No. 04-71573

### D. Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to establish the crime of felony murder. According to Petitioner, there was no evidence that he possessed the requisite state of mind for felony murder or that he intended to commit a larceny when he went to the victim's apartment. He claims that the theft of personal property was merely an afterthought, something that occurred to him after he witnessed an assault on the victim.

### 1. Relevant Case Law

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). After *Winship,* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276, 282 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (footnote omitted) (emphasis in

20

*Riley v. Berghuis*, No. 04-71573

original).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  In Michigan, the elements of felony murder are:

> (1) [t]he killing of a human being (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548.

*People v. Thew*, 201 Mich. App. 78, 85; 506 N.W.2d 547, 550 (1993) (quoting *People v. Bush*, 187 Mich. App. 316, 327; 466 N.W.2d 736, 741 (1991)) (emphasis omitted).

Larceny of any kind is a felony enumerated in the felony murder statute.  *See* MICH. COMP. LAWS § 750.316(1)(b).

> The elements of the crime of larceny in a building include "(1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or the personal property of another, (5) the taking must be without the consent and against the will of the owner . . . [and] (6) the taking must be done within the confines of the building." *People v. Wilbourne*, 44 Mich. App. 376, 378; 205 N.W.2d 250, 251 (1973).

*People v. Mumford*, 171 Mich. App. 514, 517-518; 430 N.W.2d 770, 772 (1988).  "A jury may infer that the defendant aided and abetted [a] killing by participating in the underlying offense."  *People v. Bulls*, 262 Mich. App. 618, 625; 687 N.W.2d 159, 164 (2004), *appeal denied*, 472 Mich. 867; 692 N.W.2d 840 (2005) (table).

21

*Riley v. Berghuis*, No. 04-71573

## 2. The State Court Decisions

The Michigan Court of Appeals initially determined that the evidence supported a conviction for larceny in a building,[9] but not felony murder, absent Mary McKinney's testimony. The Michigan Supreme Court did not review this issue on the merits, but concluded that Petitioner waived the right to a trial free of hearsay, such as McKinney's testimony. On remand, the Michigan Court of Appeals summarized and analyzed the evidence as follows:

> The evidence, particularly the hearsay testimony of David Ware's mother, included that [Petitioner] was in the victim's apartment with Ware when the victim was subdued and bound, with [Petitioner's] assistance, and strangled to death by Ware. An aider and abettor's state of mind may be inferred from all the facts and circumstances. A jury could infer that [Petitioner] acted with malice when he provided assistance to Ware by helping to subdue the victim after he saw Ware choke the victim until he was unconscious and stopped breathing but before Ware choked the victim for a second time, resulting in his death. If [Petitioner] did not initially know of Ware's intent to kill or cause great bodily harm to the victim, he at least became aware of Ware's intent during the first choking incident and, thus, acted with wanton and wilful disregard of the likelihood of the natural

—————————————

[9] The facts supporting a conviction for larceny from a building were:

> [Petitioner] admitted [in his statement to the police] that he was in the apartment with David Ware and the victim, and acknowledged that he answered the door when a neighbor knocked. He admitted that he took the victim's stereo from the apartment. [Petitioner] was seen by more than one person carrying the victim's personal items from the apartment. [Petitioner] was also seen near the victim's car attempting to get it started and later was seen running down an alley.

*Riley*, Mich. Ct. App. No. 211368, 2000 WL 33415967, at *1.

tendency of the behavior to cause great bodily harm.  Further, the
prosecutor presented sufficient evidence that [Petitioner] participated in the
larceny when the victim was killed.

*Riley*, Mich. Ct. App. No. 211368, 2002 WL 522822, at *2 (internal and end citations

omitted).  The court of appeals concluded on the whole record that there was sufficient

evidence to justify a rational jury in finding that Petitioner was guilty of aiding and

abetting felony murder.  The Michigan Supreme Court implicitly determined in a

subsequent decision that, even without Mary McKinney's testimony, there was sufficient

evidence from which a rational juror could find that the prosecutor proved the elements of

felony murder beyond a reasonable doubt.  This Court agrees for the reasons given below

that the evidence was sufficient to sustain Petitioner's conviction.

### 3.  Evidence of a Killing

The first element of felony murder (the killing of a human being) is undisputed.

Petitioner's defense was that David Ware killed Mark Seaton without any assistance from

him.  In addition, the medical examiner testified that the cause of death was strangulation

and the manner of death was homicide.

### 4.  Evidence of Intent

The second element of the offense requires showing that Petitioner possessed an

intent to kill, to do great bodily harm, or to create a high risk of death or great bodily

harm with knowledge that death or great bodily harm was the probable result.  When the

state seeks to convict an aider and abettor of a substantive offense, "the prosecution must

*Riley v. Berghuis*, No. 04-71573

establish that the aider and abettor 'himself possess[ed] the required intent or

participate[d] while knowing that the principal possessed the required intent.'  The aider

and abettor's 'specific intent or his knowledge of the principal's specific intent may be

inferred from circumstantial evidence.'"  *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir.

1998) (internal and end citations and footnote omitted).

> "Aiding and abetting" describes all forms of assistance rendered to the
> perpetrator of a crime and comprehends all words or deeds that might
> support, encourage, or incite the commission of a crime . . . .  To support a
> finding that a defendant aided and abetted a crime, the prosecutor must
> show that (1) the crime charged was committed by the defendant or some
> other person, (2) the defendant performed acts or gave encouragement that
> assisted the commission of the crime, and (3) the defendant intended the
> commission of the crime or had knowledge that the principal intended its
> commission at the time he gave aid and encouragement.  An aider and
> abettor's state of mind may be inferred from all the facts and circumstances.
> Factors that may be considered include a close association between the
> defendant and the principal, the defendant's participation in the planning or
> execution of the crime, and evidence of flight after the crime.

*People v. Carines*, 460 Mich. 750, 757-58; 597 N.W.2d 130, 135 (1999).


### a.  The Facts

Gloria Hollis testified that she knocked on Mark Seaton's apartment door a couple

of times on June 27, 1997.  She identified Petitioner as one of two people who opened the

door, informed her that his "cousin" was not home, and slammed the door in her face.

Mrs. Hollis then told her husband, Randy Hollis, that something was wrong.

Mr. Hollis testified that when his wife explained to him what had happened, they

24

went outside where some of their neighbors were gathered.  The neighbors also thought that something was wrong, because they had seen two men come out of the apartment building with Seaton's television and stereo and then get in Seaton's car.  Mr. Hollis looked in Seaton's window, called Seaton's name, and climbed through the window when no one answered.  He saw Seaton lying on the floor of the living room.  His hands and feet were tied with duct tape.

William McElroy was conversing with Mrs. Hollis near the side door of the apartment building when he saw some men carrying things out of the building.  Mr. McElroy identified Petitioner as the man who was carrying a stereo or component set of some kind.  He saw the men try to start Seaton's car and walk down the alley after they were unable to start the car.

Michael Thomas was a security guard for Palmer Park on January 27, 1997.  He responded to the Covington Street apartment building after hearing a police broadcast about the incident.  When he arrived at the apartment building, he saw Petitioner and another man run out of the alley.  He recognized Petitioner from the neighborhood.  Petitioner was carrying a CD player.  The other man was carrying a VCR, and he got in a car that stopped for him.  Two days later, Mr. Thomas saw Petitioner by a bus stop.  He alerted the police, who arrested Petitioner.

Investigator Samuel Quick took a statement from Petitioner after advising Petitioner of his constitutional rights.  Petitioner informed Quick that he and David Ware

*Riley v. Berghuis*, No. 04-71573

had gone to Mark Seaton's apartment on June 27, 1997.  Petitioner was invited there, and

Ware followed him.  At the apartment, Seaton and Ware engaged in sexual activity.  Then

the three men went to the store where they bought beer and liquor. When they returned to

the apartment, Seaton made a sexual advance toward Ware.  Petitioner subsequently went

into the bathroom.  He heard a loud noise like someone had hit the floor in the living

room.  When he emerged from the bathroom, he saw Ware on Seaton's back.  Ware had

Seaton in a sleeper hold and was choking Seaton, who stopped breathing.  Ware then got

up, grabbed some duct tape, and taped Seaton's feet and arms.[10]  Seaton started breathing

again, and Ware then put him in another sleeper hold and choked him to death.

Afterwards, Ware stacked things at Seaton's door.  Ware took a turntable out of the

apartment, and Petitioner took Seaton's stereo.  He did not know for sure whether Seaton

was dead when they left the building.  They tried to start Seaton's car and then ran down

the alley.  He (Petitioner) carried the stereo, which he sold on the street, and Ware carried

a VCR.

    The only defense witness was David Ware's mother, Mary McKinney.  As

previously explained, she testified about a conversation that she had with her son on the

day after the murder.  Ware told her that Seaton had made sexual advances toward him.

---

[10]  At a different point in Petitioner's statement to the police, he said that he had
asked Ware what he was doing.  Ware told him to shut up and then asked him where was
the tape.  Petitioner responded that he did not know what Ware was talking about.

*Riley v. Berghuis*, No. 04-71573

Ware then pushed Seaton away, and when Seaton turned around, Ware grabbed him and put a sleeper hold on him.  He did it two times, because the first time was not successful. Petitioner came out of the bathroom and was watching the assault.  Ware told Petitioner to get some tape, which was on the table, and "he" taped Seaton's wrists.  Both men said it was impossible that the man was dead, because he was alive and coming to when they left the apartment.

On cross- and re-cross examination by the prosecutor, Ms. McKinney testified that Petitioner helped to subdue Seaton with the tape.  Because Seaton was a big man, Ware needed help when he went after Seaton a second time.  Petitioner helped by binding Seaton's hands during the struggle.  McKinney admitted on redirect examination that her statement to the police contained no reference to Petitioner assisting her son in subduing Seaton.

### b. Summary

The evidence, when viewed in a light most favorable to the prosecution, established that Petitioner possessed the requisite intent for felony murder.  His comment to the police that he did not know for sure whether Seaton was dead suggests that, at a minimum, he intended to create a high risk of death or great bodily harm when he assisted Ware and left Seaton bound up.  Alternatively, the evidence indicated that Petitioner participated in subduing Seaton knowing that David Ware possessed the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm.  Petitioner

27

*Riley v. Berghuis*, No. 04-71573

allegedly provided assistance after observing Ware choke Seaton the first time.  The
Court concludes that the second element of felony murder was satisfied.

### 5.  Evidence of the Underlying Larceny

The third element of felony murder requires showing that Petitioner committed or
attempted to commit a felony at the time of the murder.  *See People v. Kelly*, 231 Mich.
App. 627, 643; 588 N.W.2d 480, 488-89 (1998).  "It is not necessary that the murder be
contemporaneous with the enumerated felony.  The statute requires only that the
defendant intended to commit the underlying felony at the time the homicide occurred."
*People v. Brannon*, 194 Mich. App. 121, 125; 486 N.W.2d 83, 84-85 (1992).

Petitioner's statement to the police included an admission that he took some of the
victim's personal property.  There was additional evidence that Seaton's apartment had
been ransacked and that Petitioner and Ware placed some of Seaton's property in
Seaton's car and ran away on foot when they could not start the car.  Ware subsequently
was seen getting into another car and throwing a VCR and something else in the car.  The
jury could have concluded from this evidence that Petitioner and Ware intended to steal
Seaton's personal property, including his car.  The jury also could have concluded that
Petitioner and Ware formulated the intent to steal the property before or at the time of the
actual killing.

28

*Riley v. Berghuis*, No. 04-71573

### 6. Summary

A rational trier of fact could have concluded from the evidence, as summarized above and in the state court opinions, that Petitioner aided and abetted David Ware in killing Mark Seaton by binding Seaton's hands and feet. A rational factfinder also could have concluded that this incident occurred during a larceny and that Petitioner either possessed one of the three necessary states of mind for felony murder or knew that Ware intended to kill Seaton, to do great bodily harm, or to create a high risk of death or bodily harm.

The state courts did not contravene or unreasonably apply *Jackson* when they concluded that the prosecution established the elements of felony murder beyond a reasonable doubt. Therefore, Petitioner is not entitled to habeas relief on the basis of his sufficiency-of-the-evidence claim.

### IV. Conclusion

Petitioner's claims regarding the sufficiency of the evidence, the admission of hearsay testimony, and the trial court's failure to move *sua sponte* for a directed verdict of acquittal lack merit. However, the state court's conclusion on Petitioner's ineffective-assistance-of-counsel claim resulted in an unreasonable application of *Strickland*. Petitioner therefore is entitled to the writ of habeas corpus on the basis of his ineffectiveness claim.

District courts possess broad discretion when determining the proper habeas

29

*Riley v. Berghuis*, No. 04-71573

remedy. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). They must dispose of habeas corpus matters "as law and justice require." *Id.* (quoting 28 U.S.C. § 2243). "'Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' *United States v. Morrison*, 449 U.S. 361, 364 (1981)." *Mapes v. Tate*, 388 F.3d. 187, 194 (6th Cir. 2004).

An unconditional grant of the writ releasing Petitioner from custody would go "far beyond 'neutraliz[ing]' the constitutional deprivation suffered by the defendant . . . ." *Id.* at 195 (citing *Magana v. Hofbauer*, 263 F.3d 542, 553 (6th Cir.2001)). The Court believes that the proper remedy is to adopt the approach taken by the Michigan Court of Appeals when it concluded that Petitioner was deprived of effective assistance of counsel.

The Court therefore **ORDERS** the Michigan Supreme Court to reverse Petitioner's felony murder conviction and to remand Petitioner's case for entry of a judgment of conviction for larceny in a building and for sentencing on that conviction.

The only remaining issue concerns Petitioner's recent motion for *in forma pauperis* status [Doc. #24, Sept. 2, 2005]. Petitioner seeks *in forma pauperis* status in this case so that he can proceed *in forma pauperis* on appeal, if necessary.

30

*Riley v. Berghuis*, No. 04-71573

A petitioner who has been granted *in forma pauperis* status in the District Court may proceed *in forma pauperis* on appeal without further authorization unless the District Court certifies that the appeal is not taken in good faith or that the petitioner is not otherwise entitled to proceed *in forma pauperis.*  Fed. R. App. P. 24(a)(3).  However, Petitioner already paid the filing fee for this action, and the Court has granted him relief. The motion for *in forma pauperis*, therefore, is DENIED.  The Court will entertain a motion for *in forma pauperis* status on appeal, should Petitioner find it necessary to appeal the Court's opinion.


                                                   s/Arthur J. Tarnow
                                                   Arthur J. Tarnow
                                                   United States District Judge

Dated:  September 15, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 15, 2005, by electronic and/or ordinary mail.

                                                   s/Catherine A. Pickles
                                                   Judicial Secretary